# Greene, to use of Noble & Hall, *versus* Lycoming Fire Insurance Company.

91  387
159   8
91    387
30 SC 1565

1. G. applied through T., an agent of an insurance company, for a policy of insurance. An application therefor was sent by T. to the general agent. Two days thereafter a policy for G. was sent to T. which contained the clause "loss if any under policy, payable to N. & H., mortgage creditors." T. gave a written certificate to the sheriff that G. had made application for a policy payable to N. & H., and he had procured a policy for them and in consequence a writ of execution was stayed. No part of the premium on the policy was ever paid by G. or N. & H., and the policy was not delivered to either of them. After holding it a month T. marked it "not taken" and returned it to the general agent. The latter marked it off his register and cancelled it. The mortgaged premises were subsequently destroyed by fire, and G., to use of N. & H., brought an action for the sum mentioned in the policy. The powers of the agent were limited to receiving and forwarding applications, and delivering policies sent to him on payment of the premiums. The court instructed the jury that under the evidence they should find for defendant. *Held*, that this instruction was not error.

2. It was contended that the company was estopped by the act of T. in giving notice to the sheriff, thereby causing the execution to be stayed. *Held*, that this act was unauthorized by the company, and was not within the scope of the employment or the implied powers of the agent.

3. Mentz *v.* Lancaster Fire Ins. Co., 29 P. F. Smith 475, distinguished.

October 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Erie county* : Of October and November Term 1879, No. 223.

Assumpsit by Elvira J. Greene, to the use of Orange Noble and L. H. Hall, against The Lycoming Fire Insurance Company.

The material facts will be found in the opinion of this court.

*Davenport & Griffith*, for plaintiff in error.—If the company made Thompson their agent, clothed him with the power to take applications, receive and deliver policies, and receive premiums, and he has exceeded his authority by certifying to the sheriff that he had insured this house, when in fact he had not, and thereby Noble & Hall have suffered a loss, the company is estopped from denying that the house was insured, and is liable to Noble & Hall on the policy : Bigelow on Estoppel 475.

The same rules apply to insurance companies as apply in the case of individuals, and a person who is clothed with power to act for them at all is clothed with authority to bind them as to all matters within the scope of his real or apparent authority : Bodine *v.* Ins. Co., 51 N. Y. 117; Norwich Co. *v.* Wright, 13 Wall. 122; Clark *v.* Ins. Co., 8 How. 235; Gloucester Man. Co. *v.* Ins. Co., 5 Gray 497 ; Ins. Co. *v.* Sortwell, 8 Allen 217.

*Frank Gunnison*, for defendant in error.—A declaration made by a duly authorized officer operates as an estoppel : Mentz *v.* Lancaster Fire Ins. Co., 29 P. F. Smith 477. The policy was not in

force until the premium was actually paid: Marland *v.* Royal Ins. Co., 21 P. F. Smith 393; Shaffer *v.* Ins. Co., 8 Norris 296.

An indefinite promise to give time by the agent cannot be construed into a contract to bind the company. An agent cannot bind his principal by a declaration that he has done an act he had no authority to do. It was incumbent on plaintiff to show the agent had authority to bind the company: Hays *v.* Lynn, 7 Watts 525; Ins. Co. *v.* Shultz, 1 Norris 51. In Mentz *v.* Ins. Co., *supra*, cited by plaintiff in error, the agent had authority to make the endorsement which was required to be endorsed on the policy.

Mr. Justice MERCUR delivered the opinion of the court, November 17th 1879.

All the assignments of error relate to the liability of the defendant for the acts of C. C. Thompson. The plaintiffs claim they establish either a contract or an estoppel. Noble & Hall held a judgment, secured by a mortgage, against Greene and wife, which was a lien on a lot, with a large frame building thereon, situate at Tidioute, the title to which was in the wife. They issued execution and levied on the premises. Greene and wife desired the time of payment extended. A written agreement, dated 9th February 1875, was thereupon entered into between the parties to the judgment, by which Greene and wife were to pay all the costs, and to cause the premises to be insured for the benefit of Noble & Hall, and the execution was to be stayed. It was further agreed that the sum of $100 should be paid on the judgment on the first day of each month, commencing on the first day of April following until the whole was paid. It declared "this agreement is not to be binding on Noble & Hall until after said costs are paid, and insurance effected, and policy made payable to them in case of loss."

On the same day Mrs. Greene applied to Thompson, agent of the defendant at Tidioute, for an insurance of $1000. An application therefor was prepared and sent by him to the general agent of the defendant at Erie. Two days thereafter a policy as requested was sent to Thompson for Mrs. Greene, containing the clause "loss if any under policy, payable to Noble & Hall, mortgage creditors, as their interest may appear." The agreement between the parties to the judgment was handed to the sheriff, and on the 25th February, Thompson gave a written certificate to him that Mrs. Greene had made application for an insurance of $1000, payable, in case of loss, to Noble & Hall, and that he had procured a policy for them as per application on file with the general agent at Erie. In consequence of this and of the costs being paid, the writ was stayed.

No part of the premium was ever paid by either Mrs. Greene or by Noble & Hall. The policy was not delivered to either of them. After holding it a month or more, Thompson marked it "not

[*Greene v. Lycoming Fire Ins. Co.*]

taken," and about the 15th of March returned it to the general agent. The latter received it, marked it off his register, and placed it among the cancelled policies before the fire. On the 22d March the house was destroyed by fire.

After the sale of the mortgaged premises there remained due to Noble & Hall a sum greater than that mentioned in the policy, and this suit was brought in the name of Mrs. Greene for the use of Noble & Hall. Under the whole evidence the court instructed the jury to find for the defendant.

The defendant was not liable for the agreement of Thompson unless it was within the scope of his authority. He was not authorized to write policies. He did not exercise, nor did he profess to have, any such power. His agency was limited to receiving and forwarding applications, and delivering policies sent to him for that purpose, on payment of the premiums. In the application made by Mrs. Greene she covenanted and agreed in case of a loss "to adjust the same in accordance with the by-laws of the company and the conditions of the policy." The body of the policy contained a condition that the company should not be liable by virtue of the policy "until the premium therefor be actually paid," and that "no agent is empowered to waive any of the conditions of this policy either before or after a loss, without special authority, in writing, from the company." The defendant gave no written or verbal authority to Thompson to waive any of these conditions. By sending the policy to him the company did not waive the requirement of actual payment of the premium before a delivery. Nothing in the application or in the policy indicated that Thompson could make the company liable on the policy by delivering it before the premium was paid. Still less did they indicate that he could, by any agreement to give time for its payment, make the company liable for a loss that might occur while the policy remained in his hands undelivered. If he had delivered the policy without the payment of the premium, and there had been evidence of an assent of the company thereto, either in the particular case or by its recognised general custom, a different question would be presented. In fact, he was not only not authorized to deliver the policy without payment of the premium, but he did not deliver it. He was not authorized to agree to give time for the payment thereof, before the delivery of the policy, and in the meantime make the company liable thereon or otherwise. He denies that he made any agreement to give time. Then if he did so agree, it was without any express or implied power, and the defendant was not liable on the agreement: Marland v. Royal Ins. Co., 21 P. F. Smith 393. This case must not be confounded with that class of cases in which the agent has power to act, as in Mentz v. Lancaster Fire Ins. Co., 29 P. F. Smith 475, where it is held the company is

[Greene *v.* Lycoming Fire Ins. Co.]

estopped by his declarations. In the present case there was an absence of power.

It is contended, however, that the defendant is estopped by the act of Thompson in giving the notice to the sheriff, thereby causing the execution to be stayed. We answer that was an act wholly unauthorized by the company. It was not within the scope of his employment, nor within any of his implied powers. It was clearly outside of and beyond any business in which the company was engaged. It was no party to the agreement between Mrs. Greene and Noble & Hall. It entered into no obligation to give any notice to the latter or to the sheriff. It made no agreement to issue a policy to Mrs. Greene for their benefit without a payment of the premium ; nor to hold a policy on the property until it might suit either her or their convenience to pay the premium. As she failed to pay it, they should have done so in order to give effect to the insurance.

They now seek to recover by assuming she has a legal right, which she never acquired, to enforce equities to which they were never entitled as against the defendant. It follows that the learned judge committed no error in directing the jury to find for the defendant.

Judgment affirmed. ·